

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

CRH:ICR/EHS
F. #2022R00305

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

March 22, 2023

By E-Mail and ECF

The Honorable Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Nicholas Welker
               Magistrate Docket No. 23-230 (CLP)

Dear Chief Judge Pollak:

        The defendant, Nicholas Welker, was arrested yesterday morning in San Jose, California and is scheduled to make his initial appearance this afternoon in San Jose before United States Magistrate Judge Virginia D. DeMarchi on the above-referenced complaint, which charges him with conspiring to make interstate threats, in violation of 18, United States Code, Section 371. For the reasons set forth below, the government will move for a detention hearing pursuant to 18 U.S.C. § 3142(f)(2) and respectfully submits that the defendant presents a danger to the community and a serious risk of flight that warrants the entry of a permanent order of detention pending trial.

    I.      The Offense Conduct[1]

        Beginning at least as early as August 29, 2021, members of Feuerkrieg Division ("FKD")—an international racially or ethnically motivated violent extremist (RMVE) group—including Welker, the leader of FKD, have repeatedly threatened to murder a Brooklyn-based journalist (hereinafter "Victim-1") who has reported on FKD including by interviewing members of FKD in his/her capacity as a journalist for a national news media company (hereinafter "News Media Company-1"). FKD members share a common goal of challenging laws, social order, and the government via terrorism and other violent acts. The organization encourages attacks on racial minorities, the Jewish community, the LGBTQ+ community, the U.S. Government, journalists, and critical infrastructure.

        As discussed in further detail in the complaint, on or about August 29, 2021, Welker, using the handle, "King ov Wrath," posted in a public online forum, a death threat against

---

        [1] The relevant facts, as they pertain to the defendant's pretrial detention, are proffered herein. See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (holding that the government is entitled to proceed by proffer in detention hearings).

Victim-1.  Welker's threat included an image that featured a gun aimed at Victim-1's head with the words "Race Traitor" over Victim-1's eyes and stated, "JOURNALIST F[***] OFF!  YOU HAVE BEEN WARNED."  The threat highlighted that Victim-1 "Works as a Reporter" at News Media Company-1 and is "Responsible for Stalking our Boys for Information."  After Welker posted the threat to an online forum, Welker's two minor co-conspirators (who are also members of the white supremacist group) tweeted the threat directly at Victim-1's twitter handle, so that he/she would see the death threat and, they hoped, would stop his/her reporting.

III.   Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are required to order a defendant's detention pending trial upon a determination that the defendant is either a danger to the community or a risk of flight.  See 18 U.S.C. § 3142(e) (a judicial officer "shall" order detention if "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community").  A finding of dangerousness must be supported by clear and convincing evidence.  See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).  A finding of risk of flight must be supported by a preponderance of the evidence.  See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); Chimurenga, 760 F.2d at 405.

The Bail Reform Act lists the following factors to be considered in the detention analysis: (1) the nature and circumstances of the offenses charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  See 18 U.S.C. § 3142(g).  As discussed below, these factors weigh heavily against pretrial release.

Evidentiary rules do not apply at detention hearings and the government is entitled to present evidence by way of proffer, among other means.  See 18 U.S.C. § 3142(f)(2); see also LaFontaine, 210 F.3d at 130-31 (holding that the government is entitled to proceed by proffer in detention hearings).  In the pre-trial context, few detention hearings involve live testimony or cross-examination, and, most proceed on proffer.  Id. at 131.  This is because bail hearings are "typically informal affairs, not substitutes for trial or discovery."  Id. (internal quotation marks omitted); see also United States v. Mercedes, 254 F.3d 433, 437 (2d Cir. 2001) ("We find the district court committed clear error in failing to credit the government's proffer with respect to [the defendant's] dangerousness.").

IV.   The Court Should Enter a Permanent Order of Detention

All the factors to be considered in the detention analysis show that the defendant presents both a danger to the community and a serious risk of flight if released on bond.

A.   The Nature and Circumstances of the Offense Charged

The nature of the offense charged is violent—the defendant is alleged to have made death threats against Victim-1.  The threats included a picture of a gun pointed at Victim-1's head.

Welker's co-conspirators tweeted the threatening statements and imagery directly at Victim-1 so that he/she would see it and, they hoped, he/she would fear for his/her life. The threats were explicitly made on behalf of FKD. FKD is a group that promotes violence, and Welker was its leader. Indeed, FKD members have been arrested around the world. For example, in February 2020, Conor Climo, an American member of FKD, pleaded guilty to illegal possession of an unregistered firearm in connection with his alleged plan to set fire to a Las Vegas synagogue and attack a Las Vegas LGBTQ+ bar. See United States v. Climo, 19-cr-232 (D. N.V.). In February 2020, another American FKD member, U.S. Army soldier Jarrett William Smith, pleaded guilty to charges that he shared instructions about how to make explosives online. See United States v. Smith, 19-cr-40091, (D. K.S.). In addition to these American federal charges, FKD members have been arrested around the world, including in the United Kingdom, Germany, Lithuania, and Estonia.

Welker is also an associate of an individual ("Individual-1") who was arrested on May 28, 2021 for allegedly planning a mass casualty event at a Walmart. Prior to his arrest, Individual-1 led a white supremacist group operating on Telegram known as "Inkjet Division" (Welker later became a leader of the group). On or about January 25, 2021, Individual-1 sent Welker just over $12 on the money transfer application Venmo with the caption "Fog machine repairs." On or about April 11, 2021, Individual-1 sent Welker $20 on Venmo with the caption "Alles gut zum r@ped in prison [emojis]." "Alles gut zum" is German which roughly translates to "everything for the good" with the remainder of the message communicating "raped in prison."

The defendant threatened violence. His white supremacist group and associates are known for their violence. The Court should take the defendant at his word and detain him in the interest of public safety.

B. The Weight of the Evidence

The weight of the government's evidence is strong—the government has proof in the form of the defendant's own statements that he asked for the above-described threat image to be made and that he posted it in a public forum. The government has obtained communications in which Welker asks one of his minor co-conspirator to create the threat image and in response, the co-conspirator sends Welker the threat image. On the same day, in communications also obtained by the government, Welker sends the threat image to another minor-co-conspirator and tells him that the threat, "[w]as my idea[.]" Also that same day, Welker posted the threat in multiple group chats and channels. The government also has evidence that Welker's minor co-conspirators also posted the threat directly at Victim-1's twitter handle to ensure that he/she would see it and hopefully, stop reporting on FKD.

C. The Defendant's History and Characteristics

The defendant's history and characteristics further show that he is a danger to the community. Over the past decade, the defendant has been convicted nine times of various crimes. Most troublingly, the defendant was twice convicted for violating a protective order. The defendant has had multiple protective orders filed against him, including by his mother. The fact that Welker has twice been willing to violate a court's order is directly relevant to the Court's assessment of whether the defendant will comply with any order related to bail conditions in this

3

case, and strongly supports the conclusion that no combination of conditions will reasonably assure his appearance or the safety of community members. Some of the defendant's other convictions are also indicative of violence, including a prior conviction for assault with a firearm and battery.

As noted above, Welker was arrested this morning at his apartment complex in San Jose, California. Law enforcement has also interviewed some of Welker's family members, who have described a 2013 incident in which Welker demanded money from his mother, and after she refused, he grabbed his mother by the neck causing the two to fall to the ground.[2] After Welker's mother screamed, a female associate of Welker's, who was nearby, attempted to intervene, and Welker struck his associate in the eye. Welker's mother feared that Welker would obtain a knife from his room and use it against her, so she had another family member call the police who came and arrested Welker. Following this 2013 incident, Welker's mother obtained a five-year restraining order prohibiting Welker from making contact with her. A member of Welker's family reported to law enforcement that, during the effective period of the restraining order, Welker repeatedly violated the restraining order by coming by his mother's house, including at least two occasions on which Welker's family members contacted local police to report the violation. Welker's family members have also reported to law enforcement that they have had a history of threatening encounters with Welker, including occasions on which Welker has threatened to harm himself.

The defendant has shown time and again that he is willing to commit acts of violence and to ignore court orders meant to protect people. Based on this history, the Court should not have any confidence that the defendant will follow the conditions of release set by the Court, and should instead be detained.

D. The Danger to the Community and Risk of Flight

The defendant poses risk to the community, which necessitates detention. As alleged in the complaint, the defendant made threats against Victim-1. These threats were explicit, involved the threatened use of a firearm, and threatened death. The violent nature of the threats supports detention.

The defendant is also a flight risk. The defendant appears to have limited ties to his community. He is currently unemployed. His relationships appear to exist predominantly online and all over the world, with a significant contact in Estonia, on whose behalf he made the death threats at issue in the Complaint, and an apprehended minor co-conspirator living abroad in Argentina. If the defendant is not detained, then he would be able to access the world-wide FKD network—presenting a serious risk of flight.

Moreover, at the time of Welker's arrest this morning, two other individuals were staying with him. Among other things, law enforcement agents executing a search warrant at Welker's apartment observed drug paraphernalia and found numerous bags that contained identifying information for other persons, indicating that they were likely stolen. Law enforcement

---

[2] Statements attributed to individuals herein are reflected, in sum, substance and in part.

interviewed a number of Welker's neighbors some of whom reported, in sum, substance and in part, that Welker's presence in the apartment complex is a nuisance, that his home is frequented by drug users, and that Welker's behavior has driven at least one of his neighbors to seek therapy.

The government respectfully submits that this additional information only underscores Welker's lack of significant community ties and the ongoing danger he presents to the community, which cannot reasonably be mitigated by Court-imposed conditions of pretrial supervision.

IV.     Conclusion

The defendant presents a danger to the community, as well as a serious risk of flight, such that no set of release conditions can mitigate.

For these reasons there is no set of conditions that will reasonably assure the defendant's appearance or the safety of the community, the government respectfully submits that the Court should enter a permanent order of detention pending trial.

Respectfully submitted,

BREON PEACE
United States Attorney

By:     /s/
Ellen H. Sise
Assistant U.S. Attorney
(718) 254-6166

cc:     Clerk of Court (CLP) (by ECF)